Good morning. My name is Craig Wilkin. I represent the defendant and appellant in this case, Isaac Reyes Martinez. He is the party that proceeded to trial in the case and was convicted following the trial. We've raised four issues on appeal, and I'd like to first start with the Fourth Amendment issue. I think it is the most important issue in the case for several reasons. What the parties can agree on is that this was a warrantless seizure of a vehicle and that the government can, I think, also agree that it has the burden to establish that this warrantless seizure was justified by a well-delineated exception to the warrant requirement. Where now the parties diverge is both the application of the community caretaking function as well as the application of the automobile exception, both of which have been put forth by the government as a basis for this warrantless seizure of the client's vehicle. As to the impoundment issue and the subsequent search, I think what is clear by the law from the Supreme Court, both Colorado v. Bertheim and South Dakota v. Opperman, is that when the police attempt to rely on a community caretaking function followed by an inventory search, it has to be done pursuant to settled procedures. The reason for that is to avoid these types of searches being used as pretexts for investigations. That's been clear from the Supreme Court, and Opperman, that was the basis for that holding. Therefore, in order to justify, for instance, both an impoundment and an inventory, there must be specific procedures that are followed. That's where the government goes wrong here. That's where this search goes wrong. What was clear from this search is that this was an investigation, that the government's attempt to now rely on the community caretaking function or an inventory search is simply trying to cover up for the fact that this was a pretextual search where they were investigating for narcotics after being requested by the DEA to pull this car over and search it. The officer who performed the initial stop did so on a fairly vague failure to signal prior to 100 feet before the intersection, pulled the car over and admitted during the hearing on this motion that she did so at the behest of the Drug Enforcement Administration. Now, we are not challenging the stop. What we are challenging is that the government can then impound the vehicle. That issue turns on, one, whether the government followed proper procedure in doing so. State law requires them to issue a citation. No citation was issued here. Department policy requires them to tow, allows them to tow only when necessary or when the vehicle constitutes evidence of a crime. Neither was in place here because the my client offered to have the car, somebody come pick up the car. He offered to have his wife come pick up the car. When you say no citation was issued, there was a citation issue, but it wasn't signed by the officer. Is that what you mean? It was written out by one of the officers at the scene, the corporal. Corporal, I believe, is Solario. He wrote it out. The testimony and the evidence at the hearing and in the record was that he gave all three copies of the citation to Officer Perez, the officer who initially did the stop. Officer Perez testified that she did not, that both officers admitted neither one signed the citation. Officer Perez testified she did give the citation to Mr. Martinez, but although she did not sign it, she also testified that she recognized that a citation to be validly issued had to be signed. It had to have an attestation to probable cause. The citation was, in fact, not a citation because it didn't compel my client's attendance in court. The other thing that happened here is that even the officer did not view this as a citation because after my client's arrest later that night, she shredded all three copies. If this were a citation that had been issued, that would have been a misdemeanor in violation of State law. Nobody's contending she violated State law. But what I do believe that shows and what that is evidence of is that not even the officer believed she had issued a citation in this case. So, yes, somebody did write out a ticket. It was handed to my client, but it was never signed. It was never forwarded to the court. It was never, no copy of it was ever maintained. There's no copy of it in the record here. I would submit that because State law requires the issuance of a citation and because their government is now seeking to rely on this impoundment, the government then has the burden to establish that they complied with the procedures for the very reasons set forth in South Dakota v. Hofferman, Colorado v. Bertheim, that if the government is allowed to bypass the State law and the procedures, they essentially are allowed to bypass the requirements of the Fourth Amendment and conduct vehicle seizures based simply on probable cause. What's wrong with that? Well, what's wrong with that is that the automobile exception doesn't allow it. And it has. I'm not sure that it goes. I mean, Chambers doesn't seem to have that limitation. Well, Chambers, though, what happened in Chambers is that the what the court recognized first is that it's okay to seize the vehicle for purposes of securing a search warrant because the vehicle can otherwise be moved. Then the actual holding of the case, though, is that person, the driver and occupants of that vehicle were all arrested. And all of the subsequent cases in which interpreting Chambers, and the government cited three or four from the Supreme Court and three or four from this Court, all of those cases involve cases in where the defendant is arrested. And therefore, the police have a basis to impound the vehicle and bring the vehicle – take the vehicle off the street. All of those cases are premised on the fact that the impoundment is done for a non-investigative purpose. What the government is saying here is that we can impound, under the automobile exception, we can impound for an investigative purpose. What the effect of that rule that has never been followed by any court and is an expansion I would submit of Chambers, the subsequent Supreme Court cases interpreted, and certainly any case coming from this Court, is that if the Court expands the automobile exception to allow for warrantless seizures, they essentially allow the police to leave motorists stranded based on nothing more than probable cause. That extends the automobile exception and makes the intrusion into the Fourth Amendment rights far greater than anything that has ever been recognized. So how would you articulate the rule? You have probable cause for the stop and the search. You can search. What additional probable cause would you – requirement would you impose for the impoundment? They could have impounded for the purpose of securing a warrant. I would concede that. Had the officers sought to impound the vehicle, they could have impounded the vehicle and then sought a warrant to pursue an investigatory search as – like they did without a warrant here. I would submit that. They could – Even with the same probable cause. I believe so. I think they could have relied on probable cause. Although the issue, it certainly had dissipated after a one-hour search in which nothing was found. Certainly the probable cause wasn't at the same level. But assuming probable cause continued to exist after the one-hour search, they could have impounded the vehicle for the purpose of securing a warrant. They could have impounded the vehicle pursuant to their community caretaking function had they done so properly. I don't – I don't dispute that. What I would submit is that the facts here didn't support it because under the policy can only – under the department policy, it can only be done when necessary. And it was clear it wasn't necessary here, as my client offered to have the car moved by his wife. And had they impounded that way, they could have then conducted an inventory search. But an inventory search, of course, again has to be conducted pursuant to department policy. Here it wasn't. There was no inventory actually prepared. And I think certainly a drug sniffing – there was no indication that the standard inventory practices of the Fullerton Police Department involved the drug sniffing dog Blitz, who was then brought to the scene and used to search the vehicle. So this – there were two ways they could have done it. They didn't do it that way either way. Now what they're asking in order to remedy that is an expansion of the automobile exception to say now we can seize a vehicle for the purpose of conducting an investigatory search and leave motorists stranded hundreds of miles from home. Under their reasoning, and particularly here in Southern California, when my client was 40 miles from home, they left him to walk away from the scene. And that's in fact what happened. He walked away without a car, without – and the government is asking the court to say that's – the Fourth Amendment allows that. I submit it doesn't. Okay. Just a minute. He didn't have a valid driver's license, so he couldn't drive his own car. After the car was stopped, after the collective knowledge of all of the officers, they determined that the car should be stopped. And they stopped the car. Then they go for the search. And didn't Mr. Martinez consent to the search? He did consent to the search. So you're saying his consent to the search at some point ends and then it becomes an inventory search? Certainly he never – there's no evidence to the record he ever consented to the seizure of the vehicle. The consent to the search I think has to be interpreted on what a reasonable officer would say he's – what Fourth Amendment rights is he giving up there? He consented to a search of the vehicle after being pulled over. After they searched and found nothing, he was advised that they're impounding the vehicle. He didn't consent to that. He in fact protested that. The other point is there is actually a dispute about whether he had a valid driver's license or not. At least a dispute at the time that the officers chose to impound the vehicle. Here, State law allows people to drive on the streets with foreign licenses. It does not allow residents – it gives residents of this State a grace period of approximately two weeks. The issue for him, for the officer to have probable cause to believe he did not have a valid driver's license, the officer had to have probable cause to believe he was a resident of the State of California. What he was – what he was told was he'd been driving in California for two years and that he had purchased the car seven months earlier. There was no statement about where he lived. There was no information about his residency. It was only later, following his arrest at the police station, they determined he resided in Los Angeles. Scalia, you're over a minute over, so you may want to yield your time. Yes. We'll give you five minutes for rebuttal. Thank you. Thank you. Good morning. May it please the Court. Cory Ferrentino on behalf of the appellant and defendant Marco Chavez, who was the defendant that pled guilty in this matter prior – prior to trial. The one issue that we're here for is whether or not possession of a firearm in this case, the enhancement for that under 1D1.1, was reasonably foreseeable to the appellant or the defendant in this case. The government, in their briefing, makes two erroneous conclusions. One is that in all cases, if there is a, quote, large quantity of drugs, there's a co-conspirator that another co-conspirator may possess a gun. And number two is that the reasonable foreseeability standard applies to all of the participants in the conspiracy and not particularly focusing on the appellant or the defendant in the particular case, as the law requires. And that's where I think the distinction lies between the cases cited, Garcia and Willis. And I think that both of those are helpful to the analysis, and I think that Willis is particularly helpful. And I don't know that I addressed the discrepancy or distinguishing factors between our case and Willis in my brief. So I want to briefly point out what I think distinguishes this case from Willis, which is ultimately what Garcia relied upon. In Willis, the Court found that the wife of the co-conspirator who possessed the gun should also receive the enhancement for the gun possession because she was closely related to the defendant or to the co-conspirator with the gun. They were married. They had a familial relationship. And there was an inference that they would know each other's methods of operation. They also were in each other's presence, and the gun was visible in the waistband of the husband, and the DEA agents were able to see that. In this particular case, we have an individual, Mr. Chavez, who has no criminal history, was not sophisticated in drug trafficking, told the police and the probation department that he did this because of financial trouble because his hours had been cut back at work. It had been suggested to him that he could make more money to support his family. He had indicated that he had three children, one that suffered from a medical condition and regular therapy. The negotiations in this case took several days rather than a month, as it did in Garcia. The quantity of the drugs was less than a pound of methamphetamine, whereas in Garcia and Willis the quantities were much greater. In Garcia it was 17 kilograms of cocaine. The transaction in our case took place at 4 o'clock in the afternoon. Arguably it would not necessarily be foreseeable that the suppliers would be armed. There was no indication that Mr. Chavez had dealt with these people in the past or knew them well, and the government conceded that throughout the course of the proceedings, that Mr. Chavez invited them to come to his home, outside his home, to conduct the transaction, which would infer that he did not expect them to be armed. He never saw any gun in this case. There's no evidence of that. It was hidden in a hidden compartment in the vehicle with the narcotics in a hidden compartment. He never would have been in the vehicle but for the confidential sources' insistence that he get into the car. He had no close relationship with these suppliers and would not therefore know that they were carrying a gun. And he was not sophisticated in drug trafficking. There was no indication that he was intending to enter the drug trafficking world and knew when, in fact, people would possess guns. So in this particular case, on these factors relating to this particular defendant, it would not be foreseeable for him to expect that in broad daylight the suppliers would bring a gun to this transaction. Well, in Garcia, it seemed to be the amount of narcotics that were involved. I mean, Garcia says it doesn't appear from the record Garcia had actual knowledge of the possession of the gun, which was hidden under the format, so that's the same as this. Nor could we tell from the record how well Garcia and Soto knew each other, which is your argument here. So I guess my question to you, if you're saying there's a difference that we should draw based on the amount of drugs involved, where would we draw the line? Well, I don't think that the amount of drugs should be the determining factor. It's one factor to consider. And I think that the other factors to consider are the fact that in Garcia, there was negotiations for approximately one month, indicating they were more familiar with each other than in our case. The gun was found under the floorboard of the driver's seat in the car, so it's arguably under a mat, arguably more accessible or visible to passengers in the car. Well, perhaps, but basically the Court didn't seem to think that made any difference. Well, and there is a lack of information on Mr. Garcia, but in our particular case, there is not. There's a tremendous amount of information about Mr. Chavez and the factors that I just pointed out that I think the Court has to take into consideration. And I don't think Garcia stands for the fact that when there's a large quantity, there's a presumption that a gun will be present. And, in fact, Willis says that. Well, I mean, that's what they end with. In light of the large amount of drugs involved in this case, Soto's possession of the gun was reasonably foreseeable. I mean, that's the last sentence. Right. But I also think that they relied on the fact that the negotiations took approximately a month, which would show ongoing communications. And in a comparison, well. No, go ahead. Yeah, no, I guess it kind of comes down, in a sense, to the standard of review as well. I mean, I might well agree with you on that, but on appeal, don't we owe the The only final comment I would make is that in many situations, large quantity may be determinative, and I would agree with you. In particular situations, it wouldn't be. And that's where here, whether it was a smaller quantity or a little bit larger quantity, the factors relating to Mr. Chavez still exist. And those factors support a finding that it was not reasonably foreseeable to him because of his lack of sophistication, criminal history, any prior involvement in any drug trading. It seemed like he was a man who was somewhat desperate to provide for his family, needed to make some extra money, and took advantage of the C.S.'s suggestion to connect these people via telephone call. So there's no evidence that he, and there's no communications about a gun anywhere in any of the conversations. So in this case, I don't think it is reasonably foreseeable for this particular defendant to have known or reasonably foreseen that the co-defendants would have a gun in the car. Wasn't he also involved with the same co-defendants in prior instances? There was a prior failed drug attempt. It was basically the same drug attempt that failed. I mean, there were some communications to try to negotiate this same transaction, and the supplier was not able to provide it. So I would argue that it was the same transaction. They just, he wasn't able to complete it until the date he was arrested. Okay. Well, I went back and I looked a couple of times at the exact words of the judge when he was making his findings, because it seems like both parties here agree there was a finding, and I'm not even sure if there was. One of the factors that are set forth in the United States, I think it's Armstead case where there can be, let's see, one of the procedural errors includes failing to provide adequate explanation for sentence imposed. And personally, I found it difficult to find where he actually stated what his findings were. He didn't even seem to adopt the arguments of one counsel over the other in a general, you know, for the reasons stated by the government, I therefore find, or anything like that. It was just, well, I am going to give the two points, the two levels for this, and I'm not going to give the minor participant points, and then he just went on to the 3553A factors. So do you agree that the district court judge did make adequate findings? Actually, I don't, and I feel that I may have been remiss to not raise that in my moving papers. But, and I basically assumed then that the court went on to find that it was reasonably foreseeable that Mr. Chavez would have known that the code offense possessed a gun. But if you can tell by my argument at the sentencing hearing, I was focusing more on the fact that he had no knowledge that the gun was there. I was, and the fact that Mr. Chavez was not charged with possession of the gun and the co-defendants were, and I was a bit surprised by the court's direction in the conclusion. So I don't necessarily. It sounds like you're asking us to make a de novo review and look at all the factors and weigh them ourselves and make that decision, but it's really a clear error standard. That's correct. But the court pointed out that perhaps the court didn't, the lower court did not make the actual findings that it should have made. And therefore, then I think that may change the standard. It seemed like at the start of the hearing he was explaining that there wasn't sufficient authority provided by the sentencing memorandum and he wasn't looking at the relevant factors in the jointly undertaken activity. It seemed like he was looking, he had prepared, he had done some research and he had prepared something else and seemed like he might have been caught off guard at the time of the actual sentencing hearing. Would you agree with that? You were there, right? Yeah. I was a lawyer at the hearing. I don't, well, I recall specifically him going into a different area than we had briefed in our moving papers. I know that the way that we had negotiated the plea agreement allowed for some argument on this, that Mr. Chavez had not been charged with a gun. So there may have been some, I do recall the court indicating that it had found some other authority. There was somewhat of a dearth of authority, though there was not much there. But the court then concluded that the factors were appropriate or the enhancement was appropriate but didn't really delineate why. I made the assumption, I guess, and I should have pointed out to this Court, that the factual findings were not really explicit and perhaps not sufficient. So would you recommend to this Court that we remand for the district court judge to state specifically what the findings were that he made that brought him to his conclusion? I would request this Court to consider the record as it stands. And if it's unclear, then I think that the court should find that the enhancement should not stand. If the court feels that it can't make that determination, then remand to the district court for clarification. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Anne Luwato-Wolf on behalf of the United States. I would like to start with what I perceive to be the main issue in this case, and that is my mistake during my rebuttal argument when I commented on the defendant's the cooperating witness, Acosta Ruiz. At the time, I was unaware of this Court's opinion in Shuler. Now, being aware of Shuler, I recognize that my comment was improper. However, when taken in context, and whether you apply the more probable than not standard or the higher standard as the district court did, that is harmless beyond a reasonable doubt, my error did not affect the fundamental fairness of defendant's trial. This Court generally defers to the district court in the effect of misconduct on a jury. Here, it was a brief, isolated statement, which the district court, quoting, did not consider to be a major point, not one on which the verdict would rise or fall. After the defendant raised the objection and closing arguments concluded, there was a lengthy sidebar. The district court noted that it had not previously dealt with the issue and asked the defendant for authority. Defense counsel referred to the model jury instruction on what is evidence, which instruction the court then pulled from the rest of the instructions and specifically regave to the jury immediately before they set out to deliberate. Thus ---- It didn't refer to an error. It just was a standard. No. What it referred to was the district court gave the model jury instruction on what is evidence. In other words, saying this is what the evidence is, this is what you may consider, which was the same instruction that I had given before and that I also referred to before I began my rebuttal, not in anticipation of the fact that I was going to do something improper, but because I wanted to remind the jury that the exhibits, the testimony, and the stipulated facts are what they were to make their determination on. That was the model jury instruction that the court then regave to the jury following the arguments. So he didn't give the instruction that reminds the jury that the arguments of counsel are not evidence. No. That one he did not. He gave them the instruction on what is evidence. Unlike in Shuler, the district court here weighed the various options and then crafted an appropriate curative instruction that, and again, I'm quoting the district court, instructs the jury. Are you saying that reading the standard instruction is crafting an appropriate curative instruction? Yes. And if I may quote what the district court's reasoning, the district court said that what he was doing, what the court was doing was instructing the jury on the law while not unnecessarily highlighting the moment before deliberations began the very brief conduct of defendant. So, again, the district court, who is in the best position to make a determination about the severity of the error and how best to remedy it, weighed various options because there was a lengthy discussion and this was what the district court thought was the appropriate solution. Further, the district court found the evidence, and again, I'm quoting from the court's order denying the motion for the new trial, overwhelming with the jury deliberating only a short period of time before reaching their guilty verdict. And then there was a summary of that evidence, which included the inferences drawn from the recorded telephone conversations between defendant Chavez and the confidential source in which there are many references to the multiple conspirators who are bringing the drugs. The rest will be arriving. They are late. They are, you know, bringing the drugs. Then when the officer on surveillance, who was watching defendant Chavez's house, sees the suburban pull up with the defendant driving and the other co-conspirators, he sees defendant get out with Acosta Ruiz, the cooperator, and they walk, they greet defendant Chavez. They walk with defendant Chavez. Defendant Chavez then calls the confidential source and says, my compas, my friends, my buddies have arrived. We're ready to do the deal. Then they all get back into the suburban. They engage in what the officer on surveillance saw to be counter surveillance driving. Then they head in the direction of the drug deal until the Fullerton police officer pulls in behind them, at which time they make an abrupt right turn. Then there's the very powerful fact that the drugs and the guns were found in a very well-used but hidden compartment of the defendant's car. But I think the problem from my perspective is here's the defense counsel who then spends most of his closing attacking the credibility of the other witness. And you respond then with the argument trying to sustain the credibility and corroborate the testimony by pointing out improper demeanor evidence. And I appreciate your concession of error and your explanation on that, but why doesn't that tend to indicate that it's not harmless error? Because, Your Honor, the defense during the course of the trial and here on appeal has attempted to make the government's case all about the credibility of Acosta Ruiz. Well, right. I mean, that's the thing. Right. But that is not the – all of the facts that I just went through. Right. No, I understand that. But so instead of going through all the facts in your rebuttal, and you went through some of them, you say, well, look, yeah, he's a liar and he's a thief, but look at the demeanor testimony. That corroborates it. And that's – if it is – if credibility is on the line, then, you know, it's a problem. Well, regarding the issue of Acosta Ruiz's credibility, because that was where I, you know, I was attempting to rehabilitate him with this evidence or with the action that had taken place in court. And on that issue, I think that this Court's post-Shuler opinion in Cook v. Shrero is very instructive. There the prosecutor argued in rebuttal that the defendant put a large bandage to cover up a dagger tattoo because the defendant, as opposed to the cooperating witness who had been attacked, was the one who actually had something to hide, that being his violent tendencies. And this Court held the prosecutor's comment was a response to defendant's argument that the cooperating witness had a motive to lie and a comment on readily observable facts in the courtroom that did not deprive Cook of a fair trial. Similarly, here, everyone in the courtroom saw what happened when the defendant stood up to be identified by the cooperator. It was definitely readily observable in the courtroom, and my comment was a response to the defense attacks on Acosta Ruiz's credibility and the argument that the case rose and fell with Acosta Ruiz. But, again, the government in no way concedes that and did not argue that to the jury, argued quite the contrary. And I think that's the case. Yes. Yes, it was. So part of the issue was deference to the holding of the Arizona Supreme Court. Yes, and I recognize that, Your Honor. I just want to also bring up, because I want to clarify with respect to the Fourth Amendment issue, that, and I thought that it was made clear in the government's Rule 28J letter, or response to the defendants, but the government is not relying on the community caretaking exception. The government relies on the automobile exception to the Fourth Amendment warrant requirement. And I'd like to just go over again what happened, because this is actually really textbook Fourth Amendment automobile exception. The search here occurred at the scene. The seizure, if you will, occurred as soon as the police officer pulled, and again, the reason, she had a cover story, which is not uncommon when you have drug traffickers and you are pulling them over. It is very common for the police to have some kind of a cover story, both for officer safety reasons, so they don't tell drug traffickers, by the way, we suspect that you have guns in the car. So they, you know, they come up with a cover story. That's what she did. The other thing that, you know, it's also to preserve the integrity of the DEA's investigation. So she pulls them over, but again, knowing that through the collective knowledge that there is probable cause to believe that there is a pound of methamphetamine in the car, they conduct a search. They don't find the drugs right away. They call in an officer who has a canine, Blitz. Blitz starts to conduct the search, alerts. It's during this time that the defendants are allowed to leave. They are not made to leave. They are not forced to leave. They could have sat there while the search was completed, but the search occurred at the scene. It is an ongoing, continuous search. The contraband, the drugs, were fairly well hidden. It was a, you had to snap out the cup holder in order to find it underneath. Blitz found it pretty quickly. The officer, the handler of Blitz, is familiar with this type of car, so he knew about this compartment. The original officers didn't. That's all it is. It's a search at the scene of an automobile, and the Fourth Amendment, or excuse me, the automobile exception to the Fourth Amendment warrant requirement clearly applies. It has since Carroll v. United States all the way through Chambers v. Moroni and everything up to this date. It's not some great, expansive reading of the Fourth Amendment, or excuse me, the automobile exception, as defense counsel suggests. I wanted to also just very briefly touch on a couple of the other issues that have been raised. The first one is just the admission as 404B of the defendant's prior offense, because in the reply there seems to be some suggestion that this was, that the prior was an offense of simple possession. If it were an offense of simple possession, I certainly would not have sought its admission. It wasn't. It was very similar. It's one pound of methamphetamine. That is what was before the district court. After the district court ruled in the government's favor on the motion in limine, the defendant offered to stipulate, the government agreed, and it's a well-established principle that when a defendant stipulates to evidence, he cannot later challenge it. Here, he reserved his – he preserved his right to challenge the motion in limine, so that ruling is the one that is before this Court, and the challenge to the motion in limine fails because that ruling was about a pound of methamphetamine found in defendant's suburban and is, again, textbook 404B evidence. And then – sorry. Yes, Your Honor. I tried to figure this out because I was confused. Under the Colorado Criminal Code, Section 1818.405, which is where the – what Mr. Martinez was convicted of previously, that's for sale, distribution, manufacturing. That covers all kinds of things, not simple possession. In fact, possession with intent to distribute is the only place where possession is even mentioned in there. But in the stipulation, the words that were used was that his prior was for a possession of one gram or more. Right. The specific Colorado statute covers everything from simple possession to drug trafficking. And so – I didn't see where in the Colorado statute it covers simple possession. It was only possession – it was possession with intent, not simple possession. So that was my confusion as to why there was even a stipulation for possession as opposed to possession with intent. Your Honor, I – it's my recollection that the Colorado statute does cover a very broad, you know, multiple substantive drug-related offenses, and that they – and it includes possession of more than one gram, which was the defendant's – so defendant's conviction was for more than one gram. It seems to me even if the jury should not have been told about the simple possession charge, and that that should not be used as probative evidence of a trafficking offense that he's being tried for, that it would be harmless error if, in fact, the district court judge had made the finding, which I think he did here, that, in fact, you could have introduced the prior conviction, which, in fact, was for possession with intent to distribute. Correct. Yes. Your Honor is absolutely correct. That is the ruling that the district court made, that the government could introduce evidence of the prior conviction, which involved a pound of methamphetamine. It was after that that the parties entered into the stipulation limiting it to just the fact of the conviction, which, again, was for this statute, which – I mean, in other words, it's the same offense. It just limited the government in what we could introduce. I agreed to it because it was not a major part of my case, and I didn't want to fly a bunch of witnesses out from Colorado, but it didn't change the nature of the offense. Did you say the – there was a stipulation that it was one pound? No, no, Your Honor. The stipulation was to – so, in other words, the fact of the offense was that it was a pound of methamphetamine, and the defendant conceded that in his papers in the motion in Limine. But then after the ruling on the motion in Limine adverse to the defendant, then the parties agreed to stipulate that they would introduce to the jury only the fact that the defendant had been convicted under this Colorado statute of a felony conviction for possessing more than one gram of methamphetamine, and that's what was introduced to the jury. And what – and, again, what I am saying is that, first of all, he can't complain that they didn't – that they – that the facts of the offense were not brought up to the jury because, A, he stipulated to it, B, it only advantaged him and he fully exploited that to the jury. It didn't change the nature of the offense. So if we reverse on that issue, then on the next go-around you fly in individuals from Colorado and prove it up. I certainly do, Your Honor. And then, finally, I wanted to go to the sentencing issue with Defendant Chavez. And I believe that under the – this Court's authority, Garcia as well as the recent unpublished opinion in Lomas, this Court has made it clear that very large drug deals alone point to the conclusion that those involved could reasonably foresee possession of a gun by one or more participants. Actually, we don't consider unpublished cases. Oh, okay. Sorry. But so – but you've got Garcia. The question I had really is – I know it's not really raised in this case, but there really isn't a finding here, is there? Well, the – I do think that the Court made the finding, and this is why, Your Honor, because Judge Navarro is correct that originally the district court appeared to be looking in a different direction and like – and I can't remember exactly what the district court was discussing, but it was not the reasonable foreseeability. But then when we argued the issue, both myself as well as defense counsel, that is what we argued. We argued reasonable foreseeability. I argued why I believed it was reasonably foreseeable. She argued to the contrary. And it was right after that that the district court then stated that use of a gun justifies the two-level increase. So although the district court did not make an explicit finding, making that statement right after we had argued reasonable foreseeability, I submit that his – that you can interpret his statement to be such a finding. That's all he says. I'm going to find the use of a gun justifies a two-level increase. Correct, Your Honor. That's it. Again, it follows – it does follow our argument on the issue of reasonable foreseeability. So we don't know whether he thought the large quantity was the defined factor or what? No, Your Honor. And again, this is what I argued. I do believe that given the large quantity here and the very deferential standard, it would be very difficult to say that the conclusion that he reached was illogical, implausible, or without support in the record. And in Garcia, the guns and the drugs were in two separate places, right? Here we have the guns and the drugs in the same location? That's correct, Your Honor. So how large is large? That's the – you know, we see these cases where they say there's a large quantity of drugs. How would you – where would you draw the line? I don't know that I have to make that determination. I would certainly say that when you're talking about $10,000 worth of methamphetamine, that is large. So I think that that would apply here. And if the Court has nothing else, I believe my time is just about up. Thank you. Thank you, Your Honor. The government submits. Just a few brief comments on the Fourth Amendment issue. I understand the government can now be saying they are not seeking to justify any Fourth Amendment intrusion in this case based on community caretaking function or inventory search. That's what they said. Yes. So they're trying – from the government's perspective, they are seeking to justify each and every Fourth Amendment intrusion in this case, under the automobile exception. Counsel's argument here ignores the additional Fourth Amendment intrusion between the time of the first search by the officers where they found nothing and the second search by the officer with the dog where the drugs were actually uncovered. And that is the seizure of the vehicle that separates those two events. And it's that intrusion that is subject to the Fourth Amendment challenge in this case on appeal. That's the issue we've brought. And that is a separate – So you're saying the human search and the dog search are two separate searches? Yes, I do. I do. Because the dog search comes after the seizure of the vehicle. There's this intervening event where they seize the vehicle, a separate Fourth Amendment violation, and then bring the dog in. And it's clear from the record that the dog comes after they've impounded the vehicle. They've already hooked it up to the tow truck. They've already – it comes 18 minutes after the impoundment form is filled out. And so there is this – it's a separate search. The government's justification for the Fourth Amendment seizure of the vehicle, which is clearly a Fourth Amendment – an act that is – warrants protection under the Fourth Amendment, again, is the automobile exception. I submit that no case has gone as far as the government wants to take this case. And it would expand the automobile exception to have some very, very unreasonable consequences for innocent drivers. And so that's why I think the issue is so important. A few brief comments just on the other issues, and that is this issue about the alleged curative instruction. The – I asked for – at the sidebar, after her closing, I asked for a specific curative instruction. I asked the court to allow me to reopen closing. And I asked for a mistrial. The court, when asked for authority on why this is – was improper, I argued to the court that this was improper because it was essentially like a comment on the defendant's failure to testify, and that it introduced evidence into the record. It argued evidence – argued facts that were not in evidence. The court asked me for authority for that, and I said the court can look to its own jury instructions. The court took that as, well, I'll just re-give this jury instruction that the evidence is that the testimony was false. What do you say about the argument that there was overwhelming evidence? The – well, this case rose and fell on the credibility of Mr. Acosta. We presented evidence that Mr. Acosta had access to this vehicle outside of my client's presence just shortly before they drove down together from Los Angeles to meet with him. We presented a reasonable explanation on how those drugs and guns got into the center console of my client's vehicle without his knowledge. We went to trial on a theory that Mr. Acosta Reese, who was a prior convicted drug trafficker, had transported drugs in hidden compartments in cars before, had used my client's car in the past, had knowledge of that area underneath the center console, and brought my – the theory of defense was he brought my client along to take the drugs, and I would have to go to the buyer that he had backup if necessary. The – I would strongly disagree with the argument that this evidence was overwhelming. The government says, well, the jury only deliberated two hours on the case. The jury only deliberated two hours because they were presented with, I would submit, inadmissible evidence about my client's prior conviction, inadmissible expert testimony by a DEA officer, and the government's own improper argument in closing. And I think to suggest as the – to find as the district court did that the evidence was somehow overwhelming because the first trial didn't end in a mistrial as it had in one of the other cases that I had cited, or that the jury only deliberated two hours, really – really underestimates the import of the government's improper closing argument here. We had – the government conceded in the district court that the Chapman-Reese constitutional harmless error standard applies. The government now is arguing for the lesser standard. I think Shuler makes clear it is the Chapman constitutional standard because the error implicates not only my client's Fifth Amendment right by creating this chilling effect among defendants in the exercise of the Fifth Amendment right if the government is free to comment on the demeanor while sitting at a council table, but also implicates the Sixth Amendment right to only be convicted upon evidence that is introduced in court. The government then has the burden to prove. So if the government would have said, Your Honor, will the record reflect that the defendant just stood up during Acosta-Garcia's testimony and was looking at him glaringly and making gestures, then would that have been okay? And then everybody's on notice, everyone can comment on it. There was no dispute that the – that the defendant stood up. There was a – there's no evidence in the record that he was making glaring gestures or being defiant or aggressive and angry. No, because nobody commented on it at the time. Nobody did, but the only person that commented on it was counsel in her closing argument. Right. But, I mean, the jury saw what they saw. Which – and no – we have no evidence that any juror construed it in that manner, that anybody other than counsel construed it in that manner. Well, we wouldn't because, you know, there are no juror interviews. I mean, of course the record doesn't show it. I mean, I guess I – they had a chance to see all the witnesses. They saw what happened in the courtroom. And, you know, it's – you know, she's conceded it was an improper argument. The only question is whether it's – doesn't matter. Well, in these cases where they have had improper argument, the two I would direct the Court to are Sanchez and Weatherspoon. Sanchez was just earlier this year. That's a case involving essentially an appeal, an emotional appeal during closing argument. That's a case where counsel didn't object. This Court found under the plain error standard of review that that reversal was warranted because the case turned on credibility. Without Acosta-Reis, this is a judgment of acquittal as a matter of law. They needed Acosta-Reis here. The mere presence of the drugs hidden in my client's car that he is driving doesn't get them there. They need Acosta-Reis. Acosta-Reis testifies that my client's role is the supplier. There was no evidence that my client had ever met Chavez. There was no evidence in response to the Court's comment earlier that there had been with Ms. Farentino's client some prior relationship with the co-defendants. That prior relationship was simply between Acosta-Reis and Chavez. There was no evidence that my client had any prior relationship with Chavez, the man who brokered the deal with the confidential informant. And in fact, Chavez gave a post-arrest statement saying he didn't know my client had ever met my client. It actually came in at trial, and that was part of the record before us. So we had a reasonable argument that my client lacked knowledge of this conspiracy between Acosta and Chavez, lacked knowledge of the drugs and guns that were hidden underneath the center console of his car. All right. Thank you, counsel. Thank you, Your Honor. The case to argue will be submitted. Do you have something you can say in 30 seconds? I do. You know, looking back over the Court's comments, I do believe that the Court was focused on the connection of the gun to the offense as opposed to whether it was reasonably foreseeable to the defendant. There was some argument, but in my opinion, I was focusing most on what the Court was focused on, which was the connection to the gun while arguing all these other factors about my client, but never mentioning reasonable foreseeability. I would ask this Court to consider a de novo review of the evidence that is in the record that supports a finding that it was not reasonably foreseeable that Mr. Chavez knew that the gun would be in the car, and if not, that based on even a clear error review, it doesn't support a finding in this particular case with these factors. And to your question about the gun and the drugs being in the compartment together, counsel conceded that the compartment was difficult to open. They had to bring another officer, conduct a second search. There's no evidence Mr. Chavez ever knew where the guns were being held, and the original plan was that these individuals would get out of the car, most likely come to a location and deliver the drugs. So the fact that they may have been together in the compartment, there's no indication he knew any – had any knowledge of where the drugs were being held or whether they were being held with the gun. Clearly, they were in connection with the drugs by the co-conspirators, but it was not reasonably foreseeable that he would know they were there. Thank you. Thank you. The case is adjourned. It will be submitted.
judges: Navarro, Reinhardt, Thomas